IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT MARK STEPHENS,              )
                                   )
              Petitioner,          )
                                   )
vs.                                )        Case No. 04-CV-900-HDC-SAJ
                                   )
DAVID MILLER, Warden,              )
                                   )
              Respondent.          )

## OPINION AND ORDER

Before the Court is Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. #

1). Petitioner challenges his conviction entered in Tulsa County District Court, Case No. CF-2000-

3194. Respondent filed a response (Dkt. # 21) and provided the state court records (Dkt. #s 21 and

22) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 38) to

Respondent's response, along with his own affidavit (Dkt. # 39). For the reasons discussed below,

the Court finds the petition should be denied.

### *BACKGROUND*

On June 10, 2000, at approximately 10 p.m., Vernon Coleman was approached by a man

unknown to him as he was unloading flowers and his wife's birthday cake from his car, a 1969

Mercedes. The man wore a baseball cap and had long, stringy hair. Coleman saw that the man was

armed with a handgun. The man told Coleman to give him his car keys and his wallet. Coleman gave

him the keys and placed his wallet on top of the car. The man then directed Coleman to go to the

rear of the car and open the trunk. As Coleman complied, the man told him to get in the trunk

because they were going to go for a little ride and then he would be released. As he opened the lid

of the trunk, Coleman bolted. As he ran away, he yelled that the man was armed and he was stealing

his car.  The man got in Coleman's car and drove away.  He was apprehended and arrested by police a few blocks away. The police searched the man and recovered Coleman's wallet and a loaded .38 caliber revolver from his pockets. They also recovered a baseball cap with fake hair sewn into it after the man threw it down. The arrestee was Petitioner, Robert Mark Stephens. He was charged in Tulsa County District Court, Case No. CF-2000-3194, with Robbery with Firearm(s) (Count 1) and Attempted Kidnaping (Count 2).

At the conclusion of a jury trial, held December 4-5, 2001, Petitioner was found guilty as charged. On February 2, 2002, the trial court sentenced Petitioner in accordance with the jury's recommendation to fifteen (15) years imprisonment on Count 1, and to one (1) year imprisonment on Count 2, with the two sentences to be served consecutively.  Petitioner was represented at trial by attorney Richard Couch.

Represented by attorney Danny G. Lohmann, Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA").  On appeal, he identified five (5) propositions of error as follows:

> Proposition 1:  Appellant's right of due process of law was violated by the trial court's failure to order a professional examination to determine whether Appellant was competent to stand trial.

> Proposition 2:  The trial court abused its discretion by denying Mr. Stephens the defense of mental illness.

> Proposition 3:  Appellant was denied a fair trial when the trial court refused to instruct the jury on the issue of Appellant's mental capacity, as relevant to the issue of intent.

> Proposition 4:  Mr. Stephens received ineffective assistance of counsel, thus depriving him of effectively presenting his defense of mental instability.

> Proposition 5: The trial court's sentencing policy was an abuse of discretion because it punished Mr. Stephens for exercising his right to jury trial by refusing consideration of a concurrent sentence.

(Dkt. # 21, Ex. 1). As to the claim of ineffective assistance of trial counsel, Petitioner argued that trial counsel failed to follow statutory rules providing time limits on filing a notice of intent to use mental instability defense, he failed to investigate the defense or to interview witnesses in support of the defense, trial counsel worked under a conflict of interest with Petitioner, he failed to make proper objection, and he failed to pursue evidence or use an expert. In an unpublished summary opinion, filed March 5, 2003, in Case No. F-2002-201, the OCCA affirmed Petitioner's convictions, but modified his sentences to run concurrently after finding Petitioner fifth proposition of error to be meritorious. See Dkt. # 21, Ex. 3.

Thereafter, on November 14, 2003, Petitioner, appearing *pro se*, filed an application for post conviction relief in the state district court. See Dkt. # 21, Ex. 4. He identified three (3) grounds of error as follows:

> Ground 1:    Petitioner was denied due process when the trial court committed fundamental error by conducting an inadequate post-examination competency hearing, contrary to state law, Title 22 O.S. § 1175.4, and Petitioner was prejudiced by the denial of that right to the effect of a miscarriage of justice.

> Ground 2:    Petitioner was not competent during pre-trial, trial, and post-trial proceedings, depriving him of due process under the Fourteenth (14th) Amendment to the United States Constitution, which divested the trial court of subject matter jurisdiction over the case and authority to impose the sentence, and Petitioner was prejudiced to the effect of a miscarriage of justice.

> Ground 3:    Petitioner was denied effective assistance of counsel from his defense and appellate counsels. Both defense and appellate counsels' performances were below objectively reasonable standards of professional conduct, and these counsels' deficient performances prejudiced Petitioner to the effect of a miscarriage of justice.

3

See Dkt. # 21, Ex. 4. By Order filed January 9, 2004 (Dkt. # 21, Ex. 5), the district court entered findings of fact and conclusions of law and denied the request for post-conviction relief.  On January 22, 2004, Petitioner filed a "petition for rehearing; motion for reconsideration; motion for continuance to file objections, response pleadings, and amended application for post-conviction relief" in the state district court.  See Dkt. # 21, Ex. 6. On February 12, 2004, Petitioner filed an amended application for post-conviction relief.  See Dkt. # 21, Ex. 7. He added the following grounds for relief:

Proposition 1:     Petitioner is entitled to a new trial on after discovered evidence. The withholding of evidence from the jury prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 2:     Petitioner was denied his constitutional right to be present at each and every stage of the criminal proceedings for or against him, and this denial prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 3:     Petitioner was denied his constitutional right to present an insanity or temporary defense, which would have acquitted Petitioner or would have reduced his offense and sentence, and this denial prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 4:     Petitioner was denied the right to expert witnesses on his behalf, who would have proven him insane or temporarily insane at the time of the crime.  With expert witnesses, the outcome of his trial would have been different, this denial prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 5:     Petitioner was denied evidence and witnesses on his own behalf that would have changed the proceedings and outcome of Petitioner's trial would have been different.  The denial of evidence and witnesses prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 6:     Petitioner was denied lesser offense jury instructions which violated due process, and thus made the outcome of court proceedings different.  The denial of lesser offense jury instructions prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 7:      Indictment violations occurred by charging Petitioner with offenses that were prejudicial to the effect of a miscarriage of justice, and denied Petitioner of fundamental fairness, due process, and equal protection of the law.

Proposition 8:      Petitioner was denied the right to impeach prosecution's sole key witness, the complainant victim, which denied Petitioner due process of law, evidence on his own behalf which would have changed the outcome of his trial This denial prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 9:      Judicial misconduct deprived Petitioner of fair and impartial judicial and trial proceedings, denying him of due process and equal protection of law, with prejudice toward Petitioner to the effect of a miscarriage of justice.

Proposition 10:     The prosecutor engaged in prosecutorial misconduct, and by his actions denied Petitioner his constitutional right to fair proceedings and a fair trial. Acts of prosecutorial misconduct resulted in a different outcome during the court proceedings and jury trial, and prejudiced Petitioner to the effect of a miscarriage of justice.

Proposition 11:     Petitioner's counsel was ineffective, which highly prejudiced Petitioner, denied him the right to counsel with fair and impartial court and trial proceedings, and the outcome of those proceedings and jury trial would have been different. Petitioner was prejudiced to the effect of a miscarriage of justice by his ineffective counsels.

Proposition 12:     Petitioner is being denied copies of his trial transcripts, pleadings, and prosecution's evidence used in opposition to Petitioner's case, prosecutorial answers to Petitioner's pleadings, denying Petitioner all rights to counter and oppose, to object to, and the denial of a fair opportunity to properly, adequately, and diligently file objections, adversarial pleadings, and to substantiate his case, propositions and litigation for relief and redress, denying Petitioner due process, fundamental fairness, and equal protection of the law. This denial is prejudice toward Petitioner to the effect of a miscarriage of justice.

Proposition 13:     Petitioner was denied a fair and impartial trial by jury due to all of the cumulative and collective violations, resulting in prejudice, judicial and jury bias. The cumulative denial of due process, evidence, witnesses, fairness, and impartiality demand a reversal and a new trial ordered for Petitioner.

Proposition 14:   The evidence of robbery and attempted kidnapping was insufficient to sustain verdicts of guilt against Petitioner due to the weight and evidence of insanity or temporary insanity of Petitioner at the time of offense.

Proposition 15:   Petitioner was denied due process, equal protection, and equal consideration of the state law of Oklahoma when Petitioner was denied "First Offender" judicial review, judicial relief, alternate sentencing, deferred sentence, probation, treatment, therapy, and counseling access programs as alternative to DOC prison incarceration.

Proposition 16:   Petitioner was denied due process, equal protection, and access to the court by deliberate illegal actions of officials within Corrections Corporation of America ("CCA") and Oklahoma Department of Corrections ("DOC"). Both CCA and DOC officials violated Petitioner's constitutional and legal rights by access to the court denial, and cruel and unusual punishment administered before, during, and after trial, and by attempting to end Petitioner's appeal.

(Dkt. # 21, Ex. 7). By order filed March 25, 2004, the state district court denied the claims raised in Petitioner's amended application for post-conviction relief, determining that they were either barred by *res judicata* or procedurally barred. See Dkt. # 21, Ex. 8.

Petitioner appealed to the OCCA. He identified ten (10) assignments of error as follows:

Error 1:   Petitioner was tortured, his legal materials confiscated, and denied access to the court by state actors, violative of his First (1st), Fourth (4th), Sixth (6th), Eighth (8th), and Fourteenth (14th) Amendment constitutional rights; then the court, court clerk, and state respondent conspired to deny due process, equal protection, fundamental fairness and Petitioner's opportunity to present his case, violative of his First (1st), Sixth (6th), and Fourteenth (14th) Amendment constitutional rights, actions that prejudiced Petitioner to the effect of a fundamental miscarriage of justice.

Error 2:   The prosecution engaged in prosecutorial misconduct, Brady violations, denied Petitioner his First (1st), Fourth (4th), Fifth (5th), Sixth (6th), and Fourteenth (14th) Amendment U.S. Constitutional Rights to fair proceedings, a fair trial, and appellate rights; acts of prosecutorial misconduct caused and resulted in a different outcome during court proceedings, jury trial, and on appeal, with prejudice toward Petitioner to the effect of a fundamental miscarriage of justice.

6

Error 3:        Within his original, and "Proposition 12" of his Amended Application for Post-Conviction Relief, as well as within his motion for evidentiary hearing, with affidavits and exhibits attached thereto, Petitioner submitted unchallenged evidence showing denial of his Fifth (5th), Sixth (6th), and Fourteenth (14th) Amendment U.S. Constitutional Rights and statutory right to be present at each and every stage of the proceedings for or against him, and this denial prejudiced Petitioner to the effect of a fundamental miscarriage of justice.

Error 4:        Petitioner was not competent during pre-trial, trial, and post-trial proceedings, depriving him of due process under the Fourteenth (14th) Amendment to the United States Constitution which divested the trial court of subject matter jurisdiction over the case and authority to impose the sentence, and Petitioner was prejudiced to the effect of a fundamental miscarriage of justice.

Error 5:        Petitioner is entitled to a new trial on after discovered evidence; the withholding of evidence from the jury prejudiced Petitioner to the effect of a fundamental miscarriage of justice.

Error 6:        In "Proposition 12" of Petitioner's Amended Application, Petitioner objected to the unjust denial of court records and transcripts, leaving Petitioner unable to seek his constitutional rights and opportunity for relief and redress, fundamental fairness, due process and equal protection of the law; this denial is prejudicial towards Petitioner to the effect of a fundamental miscarriage of justice.

Error 7:        Petitioner's trial counsels were ineffective, and thus denied Petitioner his Sixth (6th) and Eighth (8th) Amendment U.S. Constitutional Rights to fair and impartial jury trial and court proceedings; and the outcome of those proceedings would have been different.  Petitioner was prejudiced to the effect of a fundamental miscarriage of justice.

Error 8:        Petitioner's appellate counsel(s) were ineffective, and they thus denied Petitioner his Sixth (6th) and Fourteenth (14th) Amendment U.S. Constitutional Rights to an adequate appeal by their inadequately rasing Petitioner's claims for relief on direct appeal, and by their inadequately raising, or failing to raise appellate claims for redress and relief, Petitioner was prejudiced to the effect of a fundamental miscarriage of justice.

Error 9:        Judicial misconduct by the trial judge deprived Petitioner of First (1st), Fourth (4th), Sixth (6th), Eighth (8th), and Fourteenth (14th) Amendment constitution rights to fair and impartial judicial and trial proceedings, denying

him of due process and equal protection of law, with prejudice toward Petitioner to the effect of a fundamental miscarriage of justice.

Error 10:    The trial court denied Petitioner, "through no fault of his own," of a fair opportunity to present his case within his original and amended "application for post-conviction relief," with cumulative and collective violations of U.S. Constitutional Rights therein, and with prejudice toward Petitioner to the effect of a fundamental miscarriage of justice.

(Dkt. # 21, Ex. 9). As his claims of ineffective assistance of trial counsel, Petitioner asserted that defense counsel Richard Couch waived his right to be present at post-examination competency hearing on September 10, 2001; his trial attorney made prejudicial false statements to the court, falsely stated he was ready for trial, and falsely stated he had read the preliminary hearing transcript when it had not yet been transcribed; his trial attorney participated in "in absentia" pre-trial proceedings; trial counsel failed to move for judicial disqualification; trial counsel allowed Petitioner to be impeached by the prosecutor when he had rebuttal evidence available; trial counsel failed to move for lesser included offense instructions; counsel failed to produce expert witnesses who had evaluated Petitioner, and allowed Petitioner to be tried while incompetent; counsel failed to object to the charges, failed to move for proper or amended indictment or demurrer; failed to file timely notice of insanity defense; failed to test the testimony of the state's key witness, Vernon Coleman; failed to present a motion for a new trial after learning of Mr. Coleman's brain aneurism; and counsel conceded Petitioner's guilt during closing. See Dkt. # 21, Ex. 9. As to the claims of ineffective assistance of appellate counsel, Petitioner claimed that appellate counsel inadequately raised the ineffective assistance of trial counsel claims identified above; that his original appellate counsel, Thomas Purcell, took no action toward preparing a brief, answered none of the six (6) letters mailed from Petitioner; and withdrew nine (9) days before the filing deadline; and that replacement counsel, Danny Lohmann, failed to request an extension of time before filing an

8

inadequate brief, and did not raise, or inadequately raised issues related to Brady violations, Petitioner's absence from court proceedings, prosecutorial misconduct; failed to assist Petitioner with his struggle against Department of Corrections officials; and failed to file a reply brief. Id. By order filed June 15, 2004, in Case No. PC-2004-411 (Dkt. # 21, Ex. 10), the OCCA affirmed the denial of post-conviction relief, finding that, with the exception of the claim of ineffective assistance of appellate counsel, the claims were procedurally barred. The state appellate court held that Petitioner had failed to demonstrate ineffective assistance of appellate counsel. See Dkt. # 21, Ex. 10.

On December 2, 2004, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1), along with a supporting brief (Dkt. # 2).  In his supporting brief, Petitioner identifies his grounds for relief as follows:

Ground 1:     The trial court erred by ordering the Petitioner to stand trial without holding a proper post-examination competency hearing.

Ground 2:     Petitioner was denied effective assistance of trial counsel, in direct violation of his Sixth Amendment rights under the Untied States Constitution and Oklahoma Constitution.  Petitioner's trial counsel was ineffective for the following reasons:
1.     Trial counsel failed to secure Petitioner's presence at the Post-Examination Competency Hearing as required by law, allowing none of the competency determination procedures to be followed, pursuant to Title 22 O.S. § 1175.4.
2.     Trial counsel knowingly brought Petitioner into court proceedings while he was not getting required medications, including competency medication.
3.     Trial counsel did not investigate the case, nor any witnesses; even an alibi eyewitness, and wholly failed to prepare for jury trial, not getting the Preliminary Hearing transcript for review before the beginning of jury trial proceedings.
4.     Trial counsel failed to file timely and proper motions before the court.
5.     Trial counsel did not object to the State's use of a key witness/victim who had a brain aneurism and showed memory problems and

9

memory lapses on the trial record, then vouched for his memory at post-trial proceedings, showing overt bias and disloyalty toward Petitioner.

6.      Trial counsel refused to assist Petitioner with the preparation and presentation of a motion for new trial to the court when it became known that the prosecution had used a deficient witness with brain/memory problems at jury trial.

Ground 3:      Petitioner's appellate counsels were ineffective and they denied Petitioner his Sixth and Fourteenth Amendment U.S. Constitutional Rights by inadequately or failing to raise appellate claims for redress and relief, Petitioner was prejudiced to the effect of a fundamental miscarriage of justice. This ground advances six (6) subpropositions many of which were brought to the attention of Petitioner's appellate counsels, Thomas Purcell and Danny Lohmann, as follows:

1.      Trial counsel failed to secure Petitioner's presence at the post-examination competency hearing as required by law, allowing none of the competency determination procedures to be followed pursuant to Title 22 O.S. § 1175.4.

2.      Trial counsel knowingly brought Petitioner into court proceedings while he was not getting required medications, including competency medication.

3.      Trial counsel did not investigate the case, nor any witnesses, even an alibi eyewitness, and wholly failed to prepare for jury trial, not getting the preliminary hearing transcript for review before the beginning of jury trial proceedings.

4.      Trial counsel failed to file timely and proper motions before the court.

5.      Trial counsel did not object to the State's use of a key witness/victim who had a brain aneurism and showed memory problems and memory lapses on the trial record, then vouched for his memory at post-trial proceedings, showing overt bias and disloyalty toward Petitioner.

6.      Trial counsel refused to assist Petitioner with the preparation and presentation of a motion for new trial to the court when it became known that the prosecution had used a deficient witness with brain/memory problems at jury trial.

(Dkt. # 2).  In response to the petition, Respondent contends that Petitioner is not entitled to habeas corpus relief. See Dkt. # 21.

*ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). After careful review of the record, the Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

11

In this case, the OCCA adjudicated two (2) of Petitioner's claims of ineffective assistance of trial counsel on direct appeal.  In addition, the OCCA adjudicated a claim of ineffective assistance of appellate counsel on post-conviction appeal, including claims that appellate counsel provided ineffective assistance in failing to argue that Petitioner was deprived of due process when he was not present at the post-examination competency hearing and that appellate counsel provided ineffective assistance in failing to argue other instances of ineffective assistance of trial counsel. With these considerations in mind, the Court will review Petitioner's claims adjudicated by the OCCA.

### 1. Ineffective assistance of trial counsel (part of ground 2)

As his second proposition of error as identified in his supporting brief (Dkt. # 2), Petitioner asserts six (6) instances of ineffective assistance provided by trial counsel.  Certain of Petitioner's allegations were raised on direct appeal, specifically, subpropositions 3 and 4.  The remainder of Petitioner's claims, specifically, subpropositions 1, 2, 5, and 6, could have been but were not raised on direct appeal. Those claims were first raised on post-conviction appeal.  As a result the claims first raised on post conviction appeal were defaulted and are discussed in the procedural bar section below.

On direct appeal, see Dkt. # 21, Ex. 1, Petitioner argued, as he does in his habeas corpus petition, see Dkt. #s 1 and 2, that trial counsel provided ineffective assistance in failing to file timely and proper motions, and in failing to interview certain witnesses. The OCCA rejected the claim of ineffective assistance of trial counsel, finding as follows:

> As to Proposition IV, we find Appellant has failed to meet his burden and establish that defense counsel was ineffective. *Matthews v. State*, 45 P.3d 907, 918 (Okl. Cr.), *cert. denied*, ___ U.S. ___, 123 S.Ct. 665, ___ L.Ed.2d ___ (2002).

12

See Dkt. # 21, Ex. 3.

Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of this claim was an unreasonable application of Supreme Court precedent.  To establish ineffective assistance of counsel a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). It may be more efficient to dispose of an ineffective assistance of counsel claim based on lack of prejudice than to assess whether the counsel's performance was deficient.  Brewer v. Reynolds, 51 F.3d 1519, 1523 (10th Cir. 1995) (citing Strickland, 466 U.S. at 697).  In Matthews v. State, 45 P.3d

907, 918 (Okla. Crim. App. 2002), the OCCA applied the <u>Strickland</u> standard in rejecting an appellant's ineffective assistance of trial counsel claims.

In this case, Petitioner complains that trial counsel did not investigate the case or interview witnesses, including  an "alibi eyewitness," that he wholly failed to prepare for jury trial, and that he failed to file "timely and proper motions" before the trial court. <u>See</u> Dkt. # 2. In his petition (Dkt. # 1), Petitioner identifies the "alibi eyewitness" as Nicholas Parker.  Petitioner cites to a police report at p. 16, and claims Mr. Parker provided a written statement to police of the assailant who fled before police arrived.  <u>Id.</u> In response to the petition, Respondent discusses trial counsel's failure to call a security guard as a witness, and asserts that because the evidence of Petitioner's guilt was overwhelming, he cannot demonstrate prejudice. Nothing in the record before the Court sheds light on the identity of "Nicholas Parker" referenced by Petitioner, or the security guard referenced by Respondent. Despite the gap in the record, however, the Court agrees with Respondent that the evidence against Petitioner was overwhelming.  He was apprehended driving the victim's car only a few blocks from the scene of the robbery.  He was wearing a disguise and was armed with a loaded revolver.  He was in possession of the victim's wallet. The victim testified he had no doubt that Petitioner was the man who robbed him at gunpoint. <u>See</u> Dkt. # 22, Tr. Trans. at 285. The Court finds Petitioner has not demonstrated he suffered prejudice as a result of his trial counsel's failure to investigate or interview an "alibi eyewitness."

The focus of Petitioner's claim is counsel's alleged failure "to conduct an investigation into [his] mental illness and to investigate an insanity defense . . . ." <u>See</u> Dkt. # 2.  He also contends that he was denied the opportunity to present his mental instability defense because his attorney failed to file the required notice in a timely manner. <u>Id.</u> Other than the "alibi eyewitness" discussed above,

Petitioner fails to identify the witnesses his attorney failed to investigate or interview.  The record demonstrates, however, that the trial court provided Petitioner the opportunity to identify the witnesses he wished to call in his defense.  See Dkt. # 21, Ex. 13 at 243-47.  He identified witnesses who knew about a bribe allegedly offered to Petitioner while he was employed at Vintage Petroleum. Id. at 243. Petitioner stated that the bribe caused him to be paranoid and was the reason he was carrying a gun at the time of the offense.  Id.  He also identified as potential witnesses the Tulsa Police officers who came to his home in April of 2000 to keep him from killing himself (id. at 244), FBI agents with whom he worked as a confidential informant (id.), private investigators who had been involved in investigating the rape of his daughter (id. at 245), and his divorce attorney (id. at 246).  He also named Dr. Eugene Reynolds, who had provided psychological counseling, and Connie Hill, a DHS employee who was involved in resolving issues with his daughter (id. at 247). In response, Petitioner's attorney, Richard Couch, told the trial court that he did not believe that the information provided by Petitioner was relevant to the charges and that, in his opinion, the witnesses would present a "can of worms [that] shouldn't be opened."  (Id. at 250). He also told the trial court judge that he felt it was in Petitioner's best interest to not testify in his own behalf.  (Id.) Defense counsel clearly stated for the record that his decision not to call the witnesses identified by Petitioner was a matter of trial strategy. This Court is bound to heed the Supreme Court's warning in Strickland, 466 U.S. at 689, against using hindsight to second-guess attorneys' tactical decisions. Under Strickland, the Court is required to impose a heavy presumption that "counsel's conduct falls within the wide range of reasonable professional assistance; that is,...the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted). In this case, trial counsel's tactical decisions concerning Petitioner's

proposed witnesses do not rise to the level of deficient performance.  Petitioner is not entitled to habeas corpus relief on this claim.

Petitioner also complains that his attorney provided ineffective assistance in failing to present mental health evidence and in failing to raise an insanity defense. Having carefully reviewed the record, the Court finds that Petitioner has failed to satisfy the prejudice prong of the <u>Strickland</u> standard.  The evidence of Petitioner's guilt was overwhelming. The state presented evidence that Petitioner robbed the victim while wearing a disguise and while armed with a loaded .38 caliber revolver. <u>See</u> Dkt. # 22, Tr. Trans. at 278-286, 301-304. He also told the arresting police officers that the only reason he did this was to help his girlfriend who had been recently arrested, <u>see</u> <u>id.</u> at 307, and that he had planned to rob the victim and if he didn't have enough cash in his wallet, he was going to put him in the trunk and take him to an ATM, <u>see</u> <u>id.</u> at 321.  He also removed his personalized license plate from his own car prior to committing the robbery because he "felt like [he] didn't want everyone to know that's my car." <u>Id.</u> at 372. Oklahoma follows the demanding rule of <u>M'Naghten's Case</u>, 8 Eng. Rep. 718 (1843), determining insanity by putting to the jury the ultimate question of whether a defendant was capable of knowing right from wrong at the time of the offense. <u>Jacobson v. State</u>, 684 P.2d 556, 561 (Okla. Crim. App. 1984); <u>see also</u> <u>Smith v. Mullin</u>, 379 F.3d 919, 935 (10th Cir. 2004). Based on the cited evidence, the Court is convinced that an insanity defense would have been unsuccessful. The evidence presented by the State does not suggest that any mental illness from which Petitioner suffered at the time of the robbery was so severe as to prevent him from understanding the nature and consequences of his acts, or from knowing that they were wrong. Even if Petitioner's counsel performed deficiently in failing to investigate and interview witnesses, an acquittal was highly unlikely in light of the evidence

presented by the State demonstrating that Petitioner planned the armed robbery, took steps to conceal his identity, and knew right from wrong at the time of the offense.

Lastly, Petitioner complains that trial counsel provided ineffective assistance in failing to file "timely and proper" motions.  Specifically, Petitioner complains that he was prejudiced by trial counsel's failure to file a timely notice of intent to offer an insanity defense. Respondent indicates that trial counsel filed the notice only five (5) days before trial instead of at least twenty (20) days before trial as required by statute. See Okla. Stat. tit. 22, § 1176(A).  Prior to commencement of trial, the trial court judge heard argument on Petitioner's motions for determination of mental illness at the time of the offense and for appointment of an expert to evaluate Petitioner's mental illness at the time of the offense. See Dkt. # 22, Tr. Trans. at 9-16. The prosecutor argued that while insanity may be asserted as a defense, mental illness separate from insanity is not a legal defense. Id. at 12. In addition, the prosecutor argued that to the extent Petitioner was arguing that mental illness should be considered as a mitigating factor when determining punishment, the argument should be rejected. Id. at 13.  Defense counsel argued that further mental evaluation was necessary to determine whether insanity was a viable defense. Id. at 14. The trial court judge denied the request, not because the request was untimely, but because the court found the evidence presented at the hearing was insufficient to postpone trial in order to obtain further psychiatric examination of Petitioner. Id. at 15. In addition, the prosecutor acknowledged on the record that he had the requisite notice well in advance of trial since defense counsel "was in contact with me quite a bit on this case. He told me that he was thinking about" asserting an insanity defense. See id. at 16. As a result, the Court finds that trial counsel's failure to file the notice in a timely manner did not prejudice Petitioner. Therefore, trial counsel did not provide ineffective assistance of counsel.

Petitioner has not shown "there is a reasonable probability that, but for counsel's unprofessional errors," the jury would have acquitted him of the crimes for which he stood accused. Strickland, 466 U.S. at 694. Consequently, he was not prejudiced by his counsel's allegedly deficient performance during trial. Petitioner has failed to demonstrate that the OCCA's adjudication of the claim of ineffective assistance of trial counsel as raised on direct appeal was an unreasonable application of Strickland. Habeas corpus relief on this claim shall be denied.

### 2. Ineffective assistance of appellate counsel (ground 3)

As his third proposition of error in this habeas action, Petitioner asserts that appellate counsel provided ineffective assistance of counsel in failing to raise six (6) claims of ineffective assistance of trial counsel. On post-conviction appeal, Petitioner prefaced his claim of ineffective assistance of trial counsel with the statement "[t]he following are claims of Petitioner's trial counsels' ineffectiveness that were inadequately raised by Petitioner's appellate counsels on direct appeal." See Dkt. # 21, Ex. 9. He then identified numerous instances of ineffective assistance of trial counsel, including the claims raised in this habeas action. As a result, the Court finds that although the claims of ineffective assistance of appellate counsel raised in this habeas case were not set forth as a separate ground of error on post-conviction appeal, the claims were nonetheless contained in Petitioner's brief and were fairly presented to the OCCA on post-conviction appeal. The OCCA rejected the claim of ineffective assistance of appellate counsel, finding as follows:

> Petitioner has not established any sufficient reason why his current issues were not asserted or were inadequately raised in previous proceedings. *Id.* To support his claim of ineffective appellate counsel, Petitioner must establish his appellate counsel's performance was deficient under prevailing professional norms, and that but for the deficient performance the outcome of his appeal would have been different, or he must establish that he is factually innocent. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 693, 698 (1984). Petitioner has not established that the outcome of his appeal should have or

18

would have been different. *Id.* He has clearly not established that he is factually innocent. *Id.* Therefore, the order of the District Court of Tulsa County denying Petitioner's application for post-conviction relief in Case No. CF-2000-3194 should be, and is hereby **AFFIRMED**.

(Dkt. # 21, Ex. 10).

Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel unless he establishes that the OCCA's adjudication of the claim was an unreasonable application of federal law as determined by the United States Supreme Court. The applicable standard was established by the Supreme Court in Strickland, 466 U.S. at 687. The Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance. Id. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir.1998) (citing Cook, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. The relevant questions for assessing Petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, Petitioner "would have prevailed on his appeal." Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland, 466 U.S. at 687-91)).

19

In this case, the Court finds Petitioner has failed to establish that the OCCA's adjudication of the claim of ineffective assistance of appellate counsel was an unreasonable application of Strickland.  Appellate counsel did not perform deficiently because none of the claims of ineffective assistance of trial counsel is meritorious.  First, Petitioner claims that his trial counsel provided ineffective assistance in failing to secure his presence at the post-examination competency hearing as required by law, allowing none of the competency determination procedures to be followed pursuant to Okla. Stat. tit. 22, § 1175.4. According to the United States Supreme Court, a defendant has a due process right to be present at all critical stages "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934), *overruled in part on other grounds*, Malloy v. Hogan, 378 U.S. 1 (1964); see also Kentucky v. Stincer, 482 U.S. 730, 745 (1987); United States v. Gagnon, 470 U.S. 522, 526 (1985). Significantly, however, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder, 291 U.S. at 107-08. The OCCA has held, in a capital case where the appellant argued he had been denied his due process right to be present at his competency proceedings, including a post-examination competency hearing, that the right to be present is waivable.  Davis v. State, 980 P.2d 1111, 1114 (Okla. Crim. App. 1999).

In his petition in error filed as part of his post-conviction appeal, see Dkt. # 21, Ex. 9, Petitioner states that on April 24, 2001, following his competency examination by state psychiatrist, Dr. William Cooper, the trial court found him to be incompetent. He was transported to Eastern State Hospital ("ESH") on May 30, 2001. On September 5, 2001, Dr. R. Shawn Roberson sent a letter to

20

the trial court indicating Petitioner had regained competence.[1] The trial court conducted a post-examination competency hearing ("PECH") on September 10, 2001. See Dkt. # 21, Ex. 11, PECH Trans. The trial court noted that Petitioner was still at ESH and was not present at the hearing. Id. at 2, 4. Significantly, however, Petitioner's attorney was present at the hearing and waived Petitioner's appearance. Id. at 2. Defense counsel further stated that he had not reviewed Dr. Roberson's report with his client, but that he had reviewed it himself. Id. Based on Dr. Roberson's report and counsels' stipulations, the trial court found Petitioner competent to stand trial. Id.

After careful review of the record, the Court finds Petitioner has failed to demonstrate that a fair and just hearing was thwarted by his absence. He has failed to point to any evidence suggesting that he was not competent during trial proceedings. Even if counsel performed deficiently in waiving his presence at the PECH, Petitioner has not demonstrated that he was prejudiced by the allegedly deficient performance. Therefore, trial counsel did not provide ineffective assistance and appellate counsel did not provide ineffective assistance in failing to raise the claim on direct appeal.

Next, Petitioner alleges that appellate counsel provided ineffective assistance in failing to argue that trial counsel knowingly brought Petitioner into court proceedings while he was not getting required medications, including competency medication. Petitioner makes only conclusory factual allegations in support of this claim. The Court has reviewed the trial transcript and finds no evidence that Petitioner suffered any physical or mental complications from his alleged failure to receive required medications. In fact, prior to reading the Information and making his opening

---

[1]Petitioner has provided a copy of Dr. Roberson's letter in his appendix of exhibits, see Dkt. # 3, and in support of his motion for summary judgment, see Dkt. # 25.

statement, the prosecutor presented a motion in limine on two grounds: first, he requested that "the Court not allow any evidence as to medication, taking of medication or not taking of certain medication of the defendant," and second, that "the defendant not be able to discuss his competency or lack thereof at any time during these proceedings." See Dkt. # 22, Tr. Trans. at 261. Both defense counsel and Petitioner himself stated they had no objection to the requests, and the trial court sustained the requests without objection from Petitioner. Id. at 262. In addition, prior to commencement of trial, defense counsel brought to the Court's attention the issue of Petitioner's medications and the impact of his failure to receive the medications prescribed by physicians at ESH on his on-going competency. Id. at 5-9. The trial court denied defense counsel's request to admit Petitioner's medical records from the county jail, finding the records to be irrelevant. Id. at 9. In light of the record reflecting defense counsel's efforts, the Court finds that trial counsel did not perform deficiently as asserted by Petitioner. Because the claim lacks merit, appellate counsel did not provide ineffective assistance in failing to raise the claim on direct appeal.

Petitioner also complains that appellate counsel provided ineffective assistance in failing to argue that "trial counsel did not investigate the case, nor any witnesses, even an alibi eyewitness, and wholly failed to prepare for jury trial, not getting the preliminary hearing transcript for review." (Dkt. # 2). Some components of the underlying ineffective assistance of trial counsel claim are considered and rejected in Part B(1), above. As argued in terms of ineffective assistance of appellate counsel, Petitioner's claim is again conclusory, lacking specific factual support. The Court further finds that Petitioner has failed to support his claim that his attorney failed to prepare for trial. The trial transcript demonstrates that defense counsel used the preliminary hearing testimony for impeachment purposes during his recross examination of the victim. See Dkt. # 22, Tr. Trans. at

296, 298.  The Court finds that contrary to Petitioner's claims, trial counsel was prepared for jury trial. Because the underlying claims of ineffective assistance of trial counsel lack merit, appellate counsel did not provide ineffective assistance in failing to raise the claims on direct appeal.

In addition, Petitioner complains that appellate counsel provided ineffective assistance by failing to assert that trial counsel failed to file timely and proper motions before the court.  The Court has considered and rejected Petitioner's underlying claim in Part B(1), above. Appellate counsel did not perform deficiently in failing to raise this claim because it is meritless.

Lastly, Petitioner complains that appellate counsel provided ineffective assistance in failing to assert that trial counsel did not object to the State's use of a key witness/victim who had a brain aneurism and showed memory problems and memory lapses on the trial record, then vouched for his memory at post-trial proceedings, showing overt bias and disloyalty toward Petitioner. In a related claim, Petitioner claims that appellate counsel provided ineffective assistance in failing to argue that trial counsel refused to assist Petitioner with the preparation and presentation of a motion for new trial to the court when it became known that the prosecution had used a deficient witness with brain/memory problems at jury trial. In support of these claims, Petitioner cites to several instances of apparent memory lapses during the testimony by the victim, Vernon Coleman.  Those lapses occurred when the victim was asked to provide estimates of time. Significantly, however, the victim's memory did not falter when asked questions about the details of the armed robbery and attempted kidnaping. On those subjects, his testimony was clear and strong. In light of the overall strength of the victim's testimony as well as the strength of the corroborating evidence presented by the state, the Court finds Petitioner has failed to demonstrate how he was prejudiced by trial counsel's performance in regard to the victim's testimony. As to trial counsel's failure to assist in

the preparation and presentation of a motion for a new trial based on the alleged memory problems displayed by the victim, the Court again finds that Petitioner has failed to demonstrate that he suffered prejudice. Petitioner filed a *pro se* motion for new trial. See Dkt. # 3, attached *pro se* motion for new trial. Furthermore, given the overall strength of the victim's testimony, the Court finds no doubt that any motion for new trial based on a challenge to the victim's memory would have been denied.  These arguments are patently without merit. Appellate counsel did not perform deficiently in failing to raise meritless arguments.

Having addressed each allegation of alleged ineffective assistance of appellate counsel raised in the habeas corpus petition, the Court concludes that Petitioner has failed to demonstrate that appellate counsel performed deficiently. Strickland, 466 U.S. at 687.  In addition, the Court finds there is no reasonable probability that Petitioner would have prevailed on direct appeal had appellate counsel presented the arguments presently urged by Petitioner. Neill, 278 F.3d at 1057. The Court concludes that Petitioner has failed to satisfy the Strickland standard and, as a result, he is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel.

**C.  Procedural Bar (ground 1, parts of ground 2)**

As his first ground of error, Petitioner alleges that his post-examination competency hearing was held without his being present, in direct violation of his due process rights.  See Dkt. #s 1 and 2.  As his second ground of error, Petitioner presents six claims of ineffective assistance of trial counsel. Id. Upon careful review of the pleadings filed by Petitioner in state court, the Court finds his first habeas corpus claim was not raised on direct appeal but was first presented to the OCCA on post-conviction of appeal.  As to Petitioner's claims of ineffective assistance of trial counsel, the Court has found above that some of the claims were raised on direct appeal.  However, the

remainder of the claims were first raised on post-conviction. In affirming the state district court's

denial of post-conviction relief, the OCCA held that:

> Petitioner has failed to establish entitlement to relief in a post-conviction
> proceeding. With the exception of his claim of ineffective appellate counsel,
> Petitioner has not asserted any issue that he did not or could not have raised during
> trial proceedings or in his direct appeal.  All issues that could have and should have
> been raised during trial or direct appeal proceedings are waived, and may not be the
> basis of an application for post-conviction relief, unless sufficient reason is
> established for the failure to previously assert the issue.  22 O.S. 2001, § 1086;
> *Fowler v. State*, 1995 OK CR 29, ¶2, 896 P.2d 566, 569.
> Petitioner has not established any sufficient reason why his current issues
> were not asserted or were inadequately raised in previous proceedings. *Id.*

See Dkt. # 21, Ex. 10.  Thus, with the exception of the claim of ineffective assistance of appellate

counsel, the OCCA imposed a procedural bar on the claims that were not raised on direct appeal.

In response to the petition, Respondent asserts that this Court should uphold the procedural bar

imposed by the OCCA as to Petitioner's claims first raised on post-conviction. The Court agrees

with Respondent that Petitioner's ground 1, and the claims of ineffective assistance of trial counsel

first raised in post-conviction proceedings, are procedurally barred.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas

claim where the state's highest court declined to reach the merits of that claim on independent and

adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and

actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to

consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501

U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott,

941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is

independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of

procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

Applying the principles of procedural bar to this case, the Court concludes that Petitioner's claim challenging pretrial procedures and the ineffective assistance of trial counsel claims first raised on post-conviction are procedurally barred. The OCCA's procedural bar based on Petitioner's failure to raise the claims in a direct appeal is an "independent" state ground because it "was the exclusive basis for the state court's holding." Maes, 46 F.3d at 985.  Additionally, as to Petitioner's challenge to the procedures used during his post-examination competency hearing, the procedural bar was based on an "adequate" state ground sufficient to bar the claims. The OCCA routinely bars claims that could have been but were not raised on appeal.

As to the adequacy of the procedural bar imposed on Petitioner's claims of ineffective assistance of trial counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns may justify an exception to the general rule of procedural default. Bracheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).  The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)).  The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998).  In English, the circuit court concluded that:

> Kimmelman, Osborn, and Bracheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel

differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

After reviewing the record in the instant case in light of the factors identified in English, the Court concludes that the procedural bar imposed by the state courts on Petitioner's ineffective assistance of trial counsel claim is based on grounds adequate to preclude federal habeas review. Petitioner was represented at trial by attorney Richard Couch of Broken Arrow, Oklahoma. On appeal, Petitioner was represented by attorney Danny Lohmann of Norman, Oklahoma. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel at trial and on appeal. The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64. Even if Petitioner's claims in this case could not all be resolved on the trial record alone, Petitioner has not alleged that the Oklahoma remand procedure, as provided by Rule 3.11 of the *Rules of the Oklahoma Court of Criminal Appeals*, was inadequate to allow him to supplement the record on his ineffective assistance of counsel claims. See Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999) (once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure). Although Respondent has alleged an independent and adequate procedural bar, Petitioner has not put the adequacy of Oklahoma's remand procedure at issue. See Dkt. # 10. As a result, he cannot demonstrate that Oklahoma's procedural bar is inadequate and his claims of ineffective assistance of trial counsel are procedurally barred.

Because of Petitioner's procedural default, this Court may not consider the claims unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered.  See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941042 (10th Cir. 1997).  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In this case, Petitioner asserts that appellate counsel provided ineffective assistance in failing to raise or inadequately raising ground 1 and the six claims of ineffective assistance of trial counsel. See Dkt. # 1. It is well established that in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default.  Carrier, 477 U.S. at 488-89.  However, the assistance provided by appellate counsel must rise to the level of a constitutional violation. Id. Furthermore, the ineffective assistance of appellate counsel claim asserted as "cause" must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  Id. at 489. In this case, although Petitioner did not set out as a separate proposition of error his claim that appellate counsel provided ineffective assistance in failing to raise the claims of ineffective assistance of trial counsel on direct appeal, he did make the argument as part of his seventh assignment of error on post-conviction appeal.  See

Dkt. # 21, Ex. 9 at 21. The Court has considered Petitioner's claim of ineffective assistance of appellate counsel in part B(2), above, and has determined that appellate counsel did not provide ineffective assistance. Therefore, Petitioner's claim of ineffective assistance of appellate counsel cannot constitute "cause" sufficient to excuse Petitioner's procedural default. Carrier, 477 U.S. at 488-89.

Petitioner's only other means of gaining federal habeas review of his defaulted claims is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Snaffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). In his supporting brief (Dkt. # 2), Petitioner asserts that he is "innocent of crimes for which he was charged and convicted." He fails, however, to develop this allegation and to make any showing of "factual innocence." As a result, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result, the Court concludes that it is procedurally barred from considering the merits of Petitioner's first ground as well as his defaulted claims of ineffective assistance of trial counsel.[2] Coleman, 510 U.S. at 724. Habeas corpus relief on those grounds shall be denied.

---

[2]Even if these claims are not procedurally barred, habeas corpus relief would be denied. The Court has determined in Part B(2), above, that appellate counsel did not perform deficiently in failing to raise the omitted claims on direct appeal because the claims lack merit.

*CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus (Dkt. # 1) is **denied**.


DATED THIS 4th day of February, 2008.


HONORABLE H. DALE COOK
Senior United States District Judge